UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO.: 5:17-CR-26-TBR

UNITED STATES OF AMERICA                                    PLAINTIFF

v.

JEVAN SHEPPARD                                              DEFENDANT

MEMORANDUM OPINION & ORDER

Before the Court is Defendant Jared Hardin's Motion to Quash. [DN 190]. Sheppard responded. [DN 193]. Hardin replied. [DN 194]. The motion is ripe for adjudication. For the following reasons, the motion is **GRANTED**.

I.   **Background**

Sheppard moved, pursuant to Federal Rule of Criminal Procedure 17, for a Court order granting the issuance of subpoenas to various third parties. [DN 179]. Pursuant to Fed. R. Crim. P. 17(c)(3), Sheppard sought personal or confidential information about victim T.M. from numerous medical providers. *Id.* Pursuant to Fed. R. Crim. P. 17(c)(1), Sheppard also sought medical records of co-defendant Jared Hardin. *Id.* The Court granted Sheppard's motion for the subpoenas but ordered that the records would not be released to the parties until the Court reviewed further briefing and conducted an in camera review of the records. [DN 186]. The Court took these steps to prevent delay of trial. Sheppard filed the requested supplemental briefing. [DN 184]. Hardin filed a Motion to Quash. [DN 190]. The government filed a response to Sheppard's motion for the subpoenas. [DN 191]. Sheppard replied to the government's response. [DN 192]. Sheppard responded to Hardin's Motion to Quash. [DN 193]. Hardin replied. [DN 194]. The Court considers each of these documents, where relevant, in ruling on Hardin's Motion to Quash.

## II.   Subpoena Standards

Federal Rule of Criminal Procedure 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Rule 17 goes on to provide: "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

## III.   Nixon Test

### a.   Standards

Four requirements must be met for a subpoena to issue under Rule 17(c):

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." Against this background, [three hurdles must be met]: (1) relevancy; (2) admissibility; (3) specificity.

*United States v. Warren*, 782 F. App'x 466, 472 (6th Cir. 2019) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)) (brackets in original).

### b.   Discussion

Sheppard moved the Court for a subpoena of Jared Hardin's records at Kelley Psychiatric Clinic because "[u]pon information and belief, Jared Hardin underwent evaluation and/or counseling and/or suboxone treatment following his arrest." [DN 179 at 5]. Sheppard explains that he seeks these records because "the requested documents will provide critical evidence concerning Hardin's ability to recall the events of March 13, 2017." [DN 184 at 5]. Sheppard submits that

2

March 13, 2017 is the day that Hardin allegedly obtained drugs from Sheppard, which were allegedly ultimately provided to the victims in this case. Sheppard states: "If Hardin implicates Sheppard at trial, as anticipated, his trial testimony will be inconsistent with at least some of his prior statements to law enforcement . . . The requested documents may also shed light on [Hardin's] prior dealings with U-4, which would directly support one of Sheppard's primary defenses in this case." *Id.* In short, Sheppard argues that the documents may provide evidence undermining Hardin's memory of his drug-related interactions with Sheppard. [DN 179; DN 184]. Hardin frames it as follows:

> Mr. Sheppard hopes to impeach Mr. Hardin's anticipated testimony that Sheppard gave Hardin the U-4 that killed the victim in this case. Mr. Sheppard apparently believes the therapy records from Kelley Psychiatric will show that Mr. Hardin does not and cannot remember who gave him the U-4. Following Mr. Sheppard's presumed argument, if Mr. Hardin can't remember who supplied the drugs, then Mr. Sheppard cannot be convicted of trafficking in a substance that killed the end user.

[DN 190 at 1-2].

The Court issued the subpoenas for production to the Court but reserved a ruling on whether the *Nixon* requirements were met until the Court could consider further briefing by counsel. [DN 186].The Court does not doubt that Sheppard's request for Hardin's records is made in good faith, or that the records are not otherwise procurable in advance of trial except for through a subpoena. However, the Court doubts that Sheppard cannot properly prepare for trial without Hardin's records and that the records are "evidentiary and relevant." While the records may be marginally relevant, Sheppard's intended use of the records is to impeach Hardin, an anticipated government witness. As an initial matter, *Nixon* held that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701-02 (citing *United States v. Carter*, 15 F.R.D. 367, 371 (D.D.C 1954)); *United States v.*

*Vassar*, 346 F. App'x 17, 24 (6th Cir. 2009); *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990); *United States v. Jackson*, No. 17-50-DLB-CJS, 2018 WL 1952520, at *3 (E.D. Ky. Apr. 25, 2018). However, even if this impeachment evidence can properly be the subject of compelled production in advance of trial, its relevance is slight. It appears that Sheppard's theory will be that Hardin cannot recall buying drugs from Sheppard because he was on drugs at the time the U-4 was allegedly distributed from Sheppard to Hardin, and then from Hardin to the victims. [DN 179 at 5 ("The requested documents go directly to Hardin's ability to recall the events of March 13, 2017, so the requested records are evidentiary and highly relevant.")]. Yet, even assuming—without deciding—that the subpoenaed records meet the *Nixon* requirements, because the Court finds below that the records are protected by privilege, the records will not be released to the parties.

## IV.   Psychotherapist-Patient Privilege

### a.   Standards

"The Supreme Court has recognized a federal-common-law psychotherapist-patient privilege, holding that 'confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.'" *Simon v. Cook*, 261 F. App'x 873, 886 (6th Cir. 2008) (citing *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)). The Supreme Court has recognized that the psychotherapist-patient privilege promotes care for mental health because it allows for confidentiality and trust between patient and doctor in the context of mental health treatment. *United States v. Hayes*, 227 F.3d 578, 582 (6th Cir. 2000) (citing *Jaffee*, 518 U.S. at 10-11). In other words, "[s]hielding discussions in the course of therapy facilitates an atmosphere of confidence and trust conducive to meaningful treatment." *Hibbs v. Marcum*, No. 3:16-CV-146-

TBR-LLK, 2018 WL 953347, at \*3 (W.D. Ky. Feb. 20, 2018) (citing *Hayes*, 227 F.3d at 582).

"The Supreme Court specifically rejected a balancing of the need for the information against the need for confidentiality as a test for determining whether the privilege applied." *Id.* (citing *Hayes*, 227 F.3d at 582). However, for the psychotherapist-patient privilege to apply, the patient must have expected that the communications would remain only with the psychotherapist and undisclosed to others. *Hayse v. City of Melvindale*, No. 17-13294, 2018 WL 11176493, at \*5 (E.D. Mich. Apr. 10, 2018) (citing *Hibbs*, 2018 WL 953347, at \*3; *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1020-21 (N.D. Ill. 2000)). Thus, in situations where a patient is aware at the outset of treatment that the records will be disclosed to a third party, the privilege may not apply. *See Hibbs*, 2018 WL 953347, at \*3-4 (collecting cases). However, courts have found that the privilege still applies where the psychotherapist is to disclose limited information, such as an opinion on a police officer's fitness to return to duty. *Id.* at \*4.

### b.  Application

Hardin has moved to quash Sheppard's subpoena as to Hardin's records at Kelley Psychiatric Clinic on the grounds that the records are protected by the psychotherapist-patient privilege. [DN 190]. The United States also submits that it believes that Hardin's records are privileged and not discoverable by subpoena. [DN 191]. Hardin argues that the Supreme Court's holding in *Jaffee* establishes that the records Sheppard seeks are not discoverable. [DN 190 at 3 ("In *Jaffee v. Redmond*, the Supreme Court recognized a privilege for communications between a patient and his licensed psychotherapist . . . All of Mr. Hardin's records from Kelley Psychiatric are subject to the psychotherapist privilege, and Mr. Sheppard's subpoena for them must be quashed.")]. Further, Hardin argues that the privilege is absolute and not subject to a balancing

test. *Id.* Hardin also contends that the privilege here is unwaived and "cannot be overcome by Mr. Sheppard's Rule 17(c) subpoena." *Id.* at 5.

Sheppard responds that Hardin's records from Kelley Psychiatric Clinic are not protected by the psychotherapist-patient privilege recognized in *Jaffee*. [DN 193]. Citing *United States v. Felton*, No. 14-20529, 2017 WL 2276990, (E.D. Mich. May 25, 2017), Sheppard argues that the privilege does not apply to this case because the psychotherapist-patient privilege does not apply to criminal cases. *Id.* at 2-4. Sheppard also relies on *United States v. Mazzola*, 217 F.R.D. 84 (D. Mass. 2003) to contend that the Court should not recognize Hardin's records as privileged, or that the privilege should be superseded by numerous factors, including: (1) this is a criminal rather than a civil matter, (2) the psychotherapist-patient privilege is rooted in common law and not the United States Constitution, (3) the "need for effective cross examination" outweighs the societal interest of guarding psychotherapist-patient confidentiality, (4) defendants have a Sixth Amendment right to confront witnesses against them, and (5) mental disorders and drug addiction are probative of a witness's ability to recall events. *Id.* at 4-6 (citing *Mazzola*, 217 F.R.D. at 85-90).

Sheppard next argues that even if the psychotherapist-patient privilege does apply, its reach is limited to records containing confidential communications. [DN 193 at 6-8]. Sheppard contends that there are various types of records in Hardin's files at Kelly Psychiatric Clinic, and only the "actual psychotherapy notes, which may consist of handwritten notes of what Hardin said to his psychotherapist and the psychotherapist's impressions of Hardin" are protected. *Id.* at 7. Sheppard argues that "drug tests, inventories, assessments, psychological test results, raw data, prescription records, or other records that shine light on, assess or measure in some way, the substances to which Hardin was addicted, the quantity and frequency of use of those substances, the extent of his addiction, and how that addiction affected his mental state, cognition, and ability to recall and

6

accurately describe events" are not records that are protected by the psychotherapist-patient privilege. *Id.* at 7-8. Sheppard points to the Supreme Court's language in *Jaffee*, where the Court stated that "disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* at 7 (quoting *Jaffee*, 518 U.S. at 10). Sheppard's argument is that the Court intended that only confidential communications, and not other records, would be subject to the privilege.

Finally, Sheppard argues that the psychotherapist-patient privilege should not attach because Hardin had no expectation of privacy in his records at Kelley Psychiatric Clinic. *Id.* at 8-9. Sheppard contends that in the Court's order setting conditions for Hardin's release, one of the conditions is that Hardin "participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer." *Id.* at 8 (citing DN 12-1). Sheppard says that "[u]pon information and belief, at least some of Hardin's treatment with Kelley Psychiatric Clinic was intended to be reported to officials supervising Hardin's pre-trial release. To the extent that information was intended to be disclosed, it was not confidential." *Id.*

Hardin replied. As to Sheppard's argument that the psychotherapist-patient privilege does not apply to criminal cases, Hardin argues that *Jaffee* did not limit its application to civil cases. [DN 194 at 1]. Hardin cites another Supreme Court case—*Swindler & Berlin v. United States*, 524 U.S. 399, 408–09 (1998)—for its refusal to apply the attorney-client privilege differently in civil and criminal cases. *Id.* at 2. Hardin also points to *Jaffee*'s explicit rejection of balancing tests. *Id.* at 1. The Supreme Court in *Jaffee* stated:

> We reject the balancing component of the privilege implemented by [the lower] court and a small number of States. Making the promise of confidentiality

> contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in [*Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)], if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

*Jaffee*, 518 U.S. 1, 11. Hardin further argues that the privilege is not subordinate to a defendant's Sixth Amendment right to confront witnesses against him. [DN 194 at 2 (citing *United States v. Shrader*, 716 F.Supp.2d 464, 471, 473 (S.D.W.Va. 2010))]. As to Sheppard's reliance on *Mazzola*, Hardin contends that *Mazzola* is inapplicable because it involved the government's duty to disclose materials under Federal Rule of Criminal Procedure 16(a)(1)(C) as opposed to disclosure under a Rule 17(c) subpoena. *Id.* at 2.

Hardin next addressed Sheppard's argument that records such as drug tests, inventories, assessments, psychological test results, raw data, and prescription records are not protected by the psychotherapist-patient privilege. *Id.* at 3-4. On that point, Hardin argues that all such documents are privileged because "they necessarily implicate 'the imperative need for confidence and trust' underlying the psychotherapist-patient privilege." *Id.* at 3 (citing *Jaffee*, 518 U.S. at 10). Further, Hardin submits: "These records reflect key components of effective psychotherapy and, as the Supreme Court noted, the full, frank, and complete 'disclosure of facts, emotions, memories, and fears' supporting all of Mr. Hardin's treatment would be impeded by the possibility of subsequent disclosure . . . All psychotherapy treatment and counseling records possessed by Kelley Psychiatric Clinic are protected by the privilege and not subject to disclosure by subpoena." *Id.* (citing *Jaffee*, 518 U.S. at 10). Hardin also contends that in *Nixon*, 418 U.S. at 701, the Supreme Court held that impeachment evidence is not subject to a subpoena for production in advance of trial. *Id.*

Last, Hardin argues that the fact that one of his conditions of release was to "participate in a program of inpatient or outpatient substance abuse therapy and counseling *if directed by the pretrial services office or supervising officer*" did not result in waiver of the privilege because Hardin only agreed to participate in counseling, but not to disclosure of the counseling records. *Id.* at 4 (emphasis added). Hardin also says that he "has never been directed by the pretrial services office to pursue counseling." *Id.* Thus, Hardin argues that he has a reasonable expectation of privacy in his treatment records and the psychotherapist-patient privilege was not waived. *Id.* at 5.

The Court agrees with Hardin. Hardin's records from Kelley Psychiatric Clinic are protected by the psychotherapist-patient privilege and will not be released to the parties for use at trial. The Court will address the arguments in turn.

First, Sheppard argues that the psychotherapist-patient privilege does not apply in criminal cases. The Court disagrees. Sheppard relies in part on *Felton*, 2017 WL 2276990. The court in *Felton* stated that "[a]t his point in time, it does not appear that there is clearly established federal law that answers whether and when a victim's psycho-therapist/patient privilege must yield to a criminal defendant's desire to use such privileged information in his defense." 2017 WL 2276990 at *4. Ultimately, the *Felton* court did not decide the question of whether the privilege apples in criminal cases, because the Court denied the Rule 17(c))(3) subpoena because the defendant failed to show that "the sought after records contain specific, relevant, *and* admissible evidence." *Id.* at *6 (emphasis in original). However, Sheppard points to one of the cases *Felton* cites—*United States v. Castillo*, No. 16-cr-20344, 2016 WL 4761777 (E.D. Mich. 2016)—where the court ordered a victim's psychological and medical records to be produced to the court for in camera review. 2016 WL 4761777 at *3. However, the court in *Castillo* was misguided. The court stated:

> While it is true that courts must consider the privacy interest of a patient in the confidentiality of her medical records and the societal interest in encouraging the

9

>free flow of information between patient and psychotherapist, those interests are not absolute and, in the context of criminal matters, must "yield to the paramount right of the defense to cross-examine effectively the witness in a criminal case."

*Id.* at \*3 (citing *United States v. Society of Independent Gasoline Marketers of America*, 624 F.2d 461, 469 (4th Cir. 1979)). This statement is clearly at odds with *Jaffee*'s rejection of a trial court's balancing a patient's privacy interests against the evidentiary need for disclosure. 518 U.S. 1, 17-18. Critically, the *Castillo* court did not cite *Jaffee* at all. Accordingly, this Court finds *Castillo* wholly unpersuasive, and Sheppard's reliance on *Felton* and the *Castillo* fails.

Sheppard also relies on *Mazzola*, where the district court distinguished the case before it—a criminal prosecution—from *Jaffee*, "a civil proceeding." 217 F.R.D. at 88. As Hardin points out, the records there were sought under Federal Rule of Criminal Procedure 16(a)(1)(C) and not a Rule 17 subpoena, as is the case here. Regardless, this Court does not find it significant that *Jaffee* was a civil case and the case at bar is a criminal case. *Jaffee* held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. at 15. The Court did not limit the privilege to civil cases. Furthermore, Federal Rule of Evidence 101 provides that the Federal Rules of Evidence apply to proceedings in the United States Courts. Fed. R. Evid. 101(a). Federal Rule of Evidence 1101 provides that the rules apply in criminal cases and proceedings, and that the rules on privilege apply to all stages of a case or proceeding. Fed. R. Evid. 1101 (b), (c). Federal Rule of Evidence 501 provides, in part:

>The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>- the United States Constitution;
>- a federal statute; or
>- rules prescribed by the Supreme Court.

Fed. R. Evid. 501. The Court thus finds that the psychotherapist-patient privilege established by the Supreme Court in *Jaffee* applies to the criminal action currently before the court. Pursuant to these same rules, the Court does not find it meaningful that the privilege is rooted in the federal common law rather than a constitutional right, as Sheppard suggests. [DN 193 at 4].

Sheppard's reliance on *Mazzola* for the closely related propositions that the "need for effective cross examination" outweighs the societal interest of guarding psychotherapist-patient confidentiality, the Sixth Amendment confrontation right overrides the privilege, and mental disorders and drug addiction are probative of a witness's ability to recall events also fails. [DN 193 at 4-6]. Conducting a careful review of the relationship between the psychotherapist-patient privilege and the Sixth Amendment confrontation right, the United States District Court for the District of New Mexico found:

> [C]ases concluding that the Sixth Amendment trumps the psychotherapist-patient privilege contradict the Supreme Court's emphatic language rejecting the use of a balancing test to weigh the psychotherapist-patient privilege against other interests: "Making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege."

*United States v. DeLeon*, 426 F.Supp.3d 878, 917 (D.N.M. 2019) (quoting *Jaffee*, 518 U.S. at 17). The Court further stated, "the Sixth Amendment provides no grounds to conclude that the Defendants are entitled to access the witnesses' HIPAA-protected and privileged psychotherapy records to aid them in their cross-examination preparations." *Id.* at 918. The same is true here. *See United States v. Portillo*, 969 F.3d 144, 182 (5th Cir. 2020) (finding that defendant was not hampered in cross-examination when trial court denied production of government witness's psychiatric, psychological, and counseling records). Moreover, even if Hardin's records do contain information showing that Hardin was addicted to drugs at the time he allegedly obtained them from Sheppard and sold them to the victims, the Court believes that "broad latitude on cross-

examination . . . will amply protect [Sheppard's] Sixth Amendment rights." *DeLeon*, 426 F.Supp.3d at 921 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)).

Regarding Sheppard's argument that only confidential communications, and not drug tests, prescription records, test results, etc., are subject to the privilege, the Court finds that the privilege is not so limited. Sheppard provides the Court with no authority, other than *Jaffee* itself, to support his argument that the privilege is limited to things like "notes" and "the psychotherapist's impressions of Hardin." [DN 193 at 6-7]. The Court is concerned that drawing a distinction like the one Sheppard urges would undermine the point of the privilege in the first place. Whether the treatment-related information sought is the content of conversations between provider and patient or related information such as drug tests and prescription records, the possibility of disclosure may chill an individual's choice to seek treatment, whether it is treatment for addiction or another mental health problem. As the Court stated in Jaffee: "The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." 518 U.S. at 11. Other courts have agreed. *See Stark v. Hartt Transp. Sys.*, 937 F.Supp.2d 88, 91 (D. Me. 2013) (concluding that "the privilege shields information revealing the plaintiffs' diagnoses and the nature of his treatment"); *see also United States v. White*, No. 2:12–cr–00221, 2013 WL 1404877, at *7 (S.D.W.Va. Apr. 5, 2013) (stating that "the Court cannot discern any rational basis for distinguishing between a diagnosis and the underlying communication for purposes of disclosure"), *rev'd on other grounds*, 609 F.App'x 126 (4th Cir. 2015). However, some federal courts have found that the identity of a patient and the dates of their treatment are not within the privilege. *See* 1 McCormick On Evid. § 100, n. 6 (8th ed. 2020) (collecting cases). Sheppard argues that even if the privilege does apply,

records such as "drug tests, inventories, assessments, psychological test results, raw data, [and] prescription records" do not fall within the privilege. [DN 193 at 7]. The Court disagrees and will not permit Sheppard to obtain these documents. To the extent Sheppard wishes to cross-examine Hardin about the mere fact of treatment or the dates of treatment though, the Court will permit such questioning.

Sheppard's final argument is that Hardin waived his privilege, or that he had no expectation of privacy in the records, because treatment was one of Hardin's conditions of release. [DN 193 at 8-9]. However, the Order Setting Conditions of Release only imposes inpatient or substance abuse treatment "if directed by the pretrial services office or supervising officer." [DN 12-1 at 2]. Hardin's counsel submits that Hardin voluntarily pursued counseling and treatment and was never directed to do so by pretrial services. [DN 194 at 4-5]. While such a direction may have affected Hardin's expectation of privacy, no such direction was given here, and the Court is not aware of any disclosures that Kelley Psychiatric Clinic has made or has been directed to make to the United States Probation Office. Thus, the Court finds that Hardin did not waive any right of confidentiality to his treatment records, and the privilege is not destroyed by the condition of release.

## V.    Conclusion

For the reasons stated above, Hardin's Motion to Quash, [DN 190], is **GRANTED**. Hardin's records will not be released to the parties.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 26, 2021

cc: counsel

13